UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
FEB 0 3 2020
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

———————————————————————

SELVIN FERNANDO GONZALES
GARCIA,

        Petitioner,

    v.

WILLIAM P. BARR, Attorney General,
et al.,

        Respondents.

———————————————————————

**DECISION AND ORDER**

6:19-CV-06327 EAW

## <u>INTRODUCTION</u>

Petitioner Selvin Fernando Gonzales Garcia ("Petitioner"), a civil immigration detainee currently held at the Buffalo Federal Detention Facility in Batavia, New York, seeks a *writ of habeas corpus* pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that he is detained pursuant to 8 U.S.C. § 1226(a), and that he is entitled to release, or in the alternative, a bond hearing. (*Id.* at 2). For the reasons that follow, the Court finds that Petitioner is detained pursuant to 8 U.S.C. § 1225(b) but nonetheless, while not entitled to immediate release, Petitioner is entitled to an individualized bond hearing at which the Government bears the burden of proving by clear and convincing evidence that he poses either a risk of flight or a danger to the community.

- 1 -

# BACKGROUND

## I.    Factual Background

Petitioner is a native and citizen of Honduras. (Dkt. 4-1 at ¶ 4). He illegally entered the United States at or around 2:30 a.m. on June 18, 2018, by rafting across the Rio Grande River, and he was in the United States approximately one mile west of the Roma, Texas Port of Entry when he encountered a U.S. Border Patrol agent. (*Id.*; Dkt. 4-2 at 3). Petitioner admitted to being a citizen and national of Honduras who lacked proper immigration documents, and he was immediately arrested and transported for additional processing. (Dkt. 4-1 at ¶ 4).

Petitioner was processed for expedited removal and was charged with entering the United States without inspection in violation of 8 U.S.C. § 1325(a)(1). (*Id.* at ¶ 5). The day after his arrest—on June 19, 2018—Petitioner pleaded guilty in the United States District Court for the Southern District of Texas, and he was sentenced to time served. (*Id.*; Dkt. 4-2 at 6). On September 6, 2018, Petitioner was found to have a credible fear of persecution if returned to Honduras and was referred to the Batavia Immigration Court for further immigration proceedings pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). (Dkt. 4-2 at 7). He was served with a Notice to Appear on September 12, 2018, and a removal hearing was set for October 31, 2018. (Dkt. 4-1 at ¶ 6). On September 12, 2018, the Department of Homeland Security ("DHS") performed a custody determination pursuant to 8 U.S.C. § 1226, and notified Petitioner that he would be detained pending a final administrative determination in his immigration case. (*Id.* at ¶ 7). Petitioner requested that the DHS determination be reviewed by an immigration judge ("IJ"). (*Id.*).

On November 8, 2018, Petitioner appeared with his attorney for a master calendar hearing and a bond hearing, which were adjourned until December 4, 2018. (*Id.* at ¶ 8). A bond hearing was held on December 4, 2018, and the IJ reserved decision. (*Id.* at ¶ 9). A master calendar hearing was held the same day, and Petitioner conceded removability and requested a continuance to file an application for relief from removal. (*Id.* at ¶ 10). The proceedings were continued until February 25, 2019. (*Id.*). On December 6, 2018, the IJ denied Petitioner's request for bond, finding that he was a flight risk. (*Id.* at ¶ 9). Petitioner did not appeal the bond decision to the Board of Immigration Appeals ("BIA"). (*Id.*).

Due to closure of the immigration court for weather conditions, Petitioner's removal hearing was continued until May 3, 2019. (*Id.* at ¶ 10). Petitioner was ordered removed to Honduras, and his applications for relief from removal were denied. (*Id.* at ¶ 11). On May 31, 2019, Petitioner appealed the removal order. (*Id.* at ¶ 11). On October 28, 2019, the BIA found error in Petitioner's removal proceedings and remanded his case to the Immigration Court. (Dkt. 9). The Consulate of Honduras has approved the issuance of a travel document for Petitioner. (Dkt. 4-1 at ¶ 13).

## II. **Procedural Background**

Petitioner filed his Petition *pro se* on May 3, 2019. (Dkt. 1). Respondents filed their answer and opposition to the Petition on August 12, 2019 (Dkt. 4; Dkt. 5), and no reply was filed. Counsel appeared on Petitioner's behalf on September 30, 2019. (Dkt. 6). Oral argument was held before the undersigned on December 18, 2019, and decision was reserved. (Dkt. 11).

# DISCUSSION

## I.    Jurisdiction

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases).   District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts.   *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

## II.    Detainment Under § 1225(b) or § 1226(a)

Petitioner argues that the Government is detaining him pursuant to § 1226(a), and as a result he is entitled to a bond hearing wherein the Government bears the burden of proving by clear and convincing evidence that Petitioner should be detained.   The Government argues Petitioner was and continues to be detained pursuant to § 1225(b).   For the following reasons, the Court finds Petitioner is detained pursuant to § 1225(b).

## A.  **Proper Detention Under § 1225(b)**

"Section 1225 applies to two types of aliens: 'arriving aliens' and 'certain other aliens.'" *Dorval v. Barr*, No. 6:19-CV-06545-MAT, 2019 WL 5079566, at *3 (W.D.N.Y. Oct. 10, 2019); *see* 8 U.S.C. § 1225(b) ("Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled."). Regulations define an arriving alien as:

> [A]n applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport.

8 C.F.R. § 1001.1(q). Pursuant to § 1225, "arriving aliens" are subject to expedited removal proceedings "without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). If the "arriving alien" does so indicate, "the officer shall refer the alien for an interview by an asylum officer." *Id.* § 1225(b)(1)(A)(ii).

With regards to "certain other aliens," § 1225(b)(1)(A)(iii), titled "Application to certain other aliens," states:

> (I) In general
> The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General.  Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.
>
> (II) Aliens described
> An alien described in this clause is an alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately

prior to the date of the determination of inadmissibility under this subparagraph.

When the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, was passed, the Attorney General's authority under § 1225(b)(1)(A)(iii)(I) was delegated to the Secretary of DHS. In 2004, DHS used this authority to designate as "certain other aliens" the following:

> Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter.

Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004) (hereinafter "Certain Other Aliens Rule"). In other words, aliens who illegally entered the United States and are detained within 14 days of entry and within 100 miles of the border are treated the same as "arriving aliens" under the current statutory and regulatory scheme.

If an immigration officer determines during an interview that either an "arriving alien" or "certain other alien" has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii); *see* Certain Other Aliens Rule, 69 Fed. Reg. at 48879 ("All aliens placed into expedited removal as a result of this designation will have the same rights to a credible fear screening by an asylum officer[.]"). This detention places aliens in full removal proceedings pursuant to 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(2)(A). If the asylum officer finds the alien does not have a credible fear, the alien can request review of that determination by an IJ. 8

C.F.R. § 1208.30(g). Additionally, "[a]liens detained pursuant to Section 1225(b) may be awarded discretionary parole into the country by the Attorney General, pending their application to be admitted or for asylum." *Dorval*, 2019 WL 5079566, at *5; *see* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a) & (b)(5).

In contrast, "[s]ection 1226 generally governs the process of arresting and detaining [aliens present in the country] pending their removal." *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018). Additionally, under § 1226(a) the Attorney General "may release the alien" detained pursuant to § 1226 either on bond or under conditional parole.

Given the statutory framework described above, the Court concludes that Petitioner is an "other alien" detained pursuant to § 1225(b) as opposed to an alien detained pursuant to § 1226(a). Petitioner was detained within 100 miles of the border and within 14 days of his entry into the United States.[1] (Dkt. 4-1 at ¶ 4). Additionally, Petitioner established a credible fear of persecution and was subsequently detained. (Dkt. 4-2 at 7).

Petitioner argues that because he had already made it past the country's borders when he was arrested, he should have been detained pursuant to § 1226(a). (Dkt. 8 at 4). However, Petitioner relies solely on the language of § 1226(a) and does not address the language of § 1225(b) and its associated regulations, including the Certain Other Aliens Rule. *See Singh v. Barr*, No. 19-CV-1208, 2019 WL 6609312 (W.D.N.Y. Dec. 3, 2019) (holding alien "apprehended at the United States-Mexico border within a day of his illegal

---

[1]     Petitioner contends it is unclear when and where he was detained. However, the record submitted by Respondents demonstrates that he was apprehended under conditions that comport with the Certain Other Aliens Rule. (*See* Dkt. 4-2 at 2-3).

entry" was detained under § 1225). Accordingly, the Court finds Petitioner is detained under § 1225(b).

**B.    Estoppel**

Petitioner also argues that even if it was proper for him to be detained under § 1225(b), the Government should be estopped from taking that position because it treated him as detained pursuant to § 1226(a). Petitioner points to "two key pieces of evidence" in support of his position: first, the Notice of Custody Determination form submitted by Respondents that states the determination was made pursuant to § 1226 (Dkt. 4-2 at 9); and second, a Notice to Appear designating Petitioner as an alien present in the United States who has not been admitted or paroled (*id.* at 7). Petitioner further argues that "Respondents do not offer a reason for now changing the statutory justification for detention." (Dkt. 8 at 6). At oral argument, Petitioner's counsel claimed that the doctrine of equitable estoppel precludes the Government from now classifying Petitioner as detained under § 1225(b).

"[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984). "While this circuit has occasionally found the Government to be estopped," it has done so "only in very limited and unusual circumstances," *United States v. Boccanfuso*, 882 F.2d 666, 670 (2d Cir. 1989), and courts must apply the doctrine of equitable estoppel to the Government "with the utmost caution and restraint," *Estate of Carberry v. Commissioner of Internal Revenue*, 933 F.2d 1124, 1127 (2d Cir. 1991) (quotation omitted). "The Federal Government can be estopped only upon a showing that it made a misrepresentation upon which the other party reasonably and detrimentally relied and that

there was affirmative misconduct on the part of the government." *Landau's, Inc. v. United States*, No. CV 90-0092 ADS, 1990 WL 68904, at *2 (E.D.N.Y. May 15, 1990); *see Heckler*, 467 U.S. at 59 ("[T]he party claiming the estoppel must have relied on its adversary's conduct 'in such a manner as to change his position for the worse' and that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." (footnotes omitted)); *Drozd v. I.N.S.*, 155 F.3d 81, 90 (2d Cir. 1998) ("[The petitioner]'s claim falls short of the 'affirmative misconduct' that is a prerequisite to estoppel."). "[N]egligent conduct is an insufficient basis for an estoppel claim against the government." *Ahmed v. Holder*, 624 F.3d 150, 155 (2d Cir. 2010) (citing *INS v. Miranda*, 459 U.S. 14, 18 (1982)).[2]

The record before the Court demonstrates that Petitioner was, at least initially, detained under § 1225(b). A Determination of Inadmissibility as to Petitioner dated June 18, 2018, states: "[p]ursuant to [8 U.S.C. § 1225(b)(1)], the Department of Homeland Security has determined that you are inadmissible to the United States." (Dkt. 4-2 at 5). The record further shows that even if the Government did at some point detain Petitioner under § 1226(a) as opposed to § 1225(b), the Government's conduct does not rise above mere negligence. Petitioner only points to documents stating that he was given a bond hearing pursuant to § 1226(a); he does not cite to any evidence that demonstrates

---

[2]    During oral argument, Petitioner's counsel cited to *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117 (2016), to support his argument that he can support an estoppel claim against the Government based on negligence. *Encino Motorcars* does not address estoppel, but instead discusses whether the government's action was arbitrary and capricious. *See id.* at 2125-27.

Respondents intended to detain him under § 1226(a) in an effort to deprive him of any rights he was entitled to under § 1225(b). *See Abdi v. Duke*, 280 F. Supp. 3d 373 (W.D.N.Y. 2017) (implementing preliminary injunction wherein subclass of arriving asylum-seekers who have passed a credible fear interview and who are or will be detained at the Buffalo Federal Detention Facility in Batavia, New York, who have not been granted parole and who have been detained for six months or more, were entitled to an individualized bond hearing where government bore the burden of proving by clear and convincing evidence that an individual is a flight risk or a danger to the community), *vacated in relevant part by Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019).

Additionally, at oral argument, counsel for the Government provided reasonable explanations for the use of the forms Petitioner points to as evidence of § 1226(a) detention. The Notice to Appear, a form document prepared by DHS, marks Petitioner as "an alien present in the United States who has not been admitted or paroled" as opposed to "an arriving alien." (Dkt. 4-2 at 7). Because Petitioner was detained after crossing the U.S. border, he is not an "arriving alien" pursuant to 8 U.S.C. § 1225(b)(1)(A)(i).[3] Instead, he has been designated by DHS as a "certain other alien" pursuant to 8 U.S.C. § 1225(b)(1)(A)(iii). Accordingly, it would not have been appropriate to check the "arriving alien" box on Petitioner's form. The more accurate description of Petitioner's status as a "certain other alien" is the box that was checked, "an alien present in the United

---

[3]     The Government also contends that because this Court's injunction in *Abdi*, 280 F. Supp. 3d 373, applies to "arriving asylum-seekers," it does not apply to Petitioner as a "certain other alien."

States who has not been admitted or paroled." While this box also applies to aliens detained pursuant to § 1226(a), lack of clarity on a form does not amount to more than negligent conduct by the Government.

Moreover, the Notice of Custody Determination prepared for Petitioner is also a form. At oral argument, Respondents' counsel argued that because the only statutory provision that provides for bond hearings in the immigration detention context is § 1226, and because the law is not currently settled as to whether immigrants detained under § 1225(b) are entitled to a bond hearing under the Constitution, the form notice states that the administrative determination is made "[p]ursuant to the authority contained in [§ 1226]." (Dkt. 4-2 at 9). Again, the Court finds that an inartfully drafted form, even one that generates confusion, does not rise to anything more than negligence and, thus, is insufficient to estop the Government.

For the reasons set forth above, the Court finds that Petitioner was at all relevant times detained pursuant to § 1225(b). The Court must next address what due process rights, if any, Petitioner is entitled to as a "certain other alien" detained pursuant to that provision.

**III.    Due Process**

Petitioner argues that even if he is detained under § 1225(b), he is entitled to a bond hearing where the Government bears the burden of proving by clear and convincing evidence that he poses a risk of flight or a danger to the community. Respondents contend that Petitioner has not exhausted his administrative remedies, and that Petitioner's mandatory detention pursuant to § 1225(b) is lawful in any event. The Court finds due

process entitles Petitioner to a bond hearing where the Government bears the burden of proof.

## A.    Exhaustion

"There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter." *Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1-2 (S.D.N.Y. Jan. 23, 2017) (collecting cases). "Exhaustion of administrative remedies may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 (1938)); *see Compunnel Software Grp., Inc. v. Gupta*, No. 14 Civ. 4790(SAS), 2015 WL 1224298, at *4 (S.D.N.Y. Mar. 17, 2015) ("The exhaustion doctrine, however, is also subject to numerous exceptions.").

The Government argues that the Court should not entertain Petitioner's due process arguments because Petitioner did not seek discretionary parole or appeal the IJ's bond decision to the BIA. The Court declines to dismiss the Petition on exhaustion grounds for the reasons that follow.

### 1.    Discretionary Parole

The Government contends that Petitioner failed to exhaust his administrative remedies because he did not request discretionary parole. (Dkt. 5 at 15-16). The Court

does not find Petitioner's failure to request a parole determination before filing his Petition to be dispositive.

"The only statutory mechanism for release from § 1225(b) custody is found in 8 U.S.C. § 1182(d)(5)(A)," *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *2 (S.D.N.Y. Aug. 20, 2018). Under that provision, an individual detained under § 1225(b) can be paroled "into the United States temporarily" by the Secretary of DHS "in his discretion." 8 U.S.C. § 1182(d)(5)(A); *see* Certain Other Aliens Rule, 69 Fed. Reg. at 48879.

The Court finds that requiring Petitioner to request parole before considering his Petition would be futile. Petitioner already had a bond hearing where a neutral decision-maker found he was not eligible to be released on bond. If Petitioner was found to be ineligible for bond under those proceedings, then he would almost certainly not be released under the more discretionary statutory parole standard. *See Clerveaux v. Searls*, 397 F. Supp. 3d 299, 314 (W.D.N.Y. 2019) (discussing that 8 C.F.R. § 212.5, the regulation governing parole proceedings, "places extraordinarily broad discretion over whether to release a detainee in the hands of DHS officials without requiring any sort of rigorous review"). Moreover, Petitioner could not make the constitutional challenges he brings in the instant matter in a parole proceeding. *See Gutierrez Cupido v. Barr*, No. 19-CV-6367-FPG, 2019 WL 4861018, at *2 (W.D.N.Y. Oct. 2, 2019) (holding exhaustion was not required because a parole proceeding "is not a forum in which an alien may press constitutional challenges to immigration statutes and regulations"), *appeal filed*, No. 19-

3994 (2d Cir. Dec. 2, 2019). Accordingly, the Court will not require Petitioner to request a parole determination before considering his Petition.

### 2. Appeal to BIA

The Government also argues that Petitioner's failure to appeal his bond decision to the BIA is fatal to his Petition. For the following reasons, the Court finds requiring Petitioner to appeal his bond decision to the BIA is not necessary for consideration of Petitioner's due process claim.

The Government contends that because the BIA could have reversed the IJ's decision and ordered bond, Petitioner's failure to appeal the IJ's bond determination to the BIA should result in dismissal of his Petition. However, as discussed above, administrative remedies would not properly address the claims in the Petition because Petitioner raises substantial constitutional questions regarding the burden of proof that due process requires at a bond hearing. *See Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("[T]he BIA has no authority [to] address issues pertaining to the Constitution."), *appeal filed*, No. 19-2284 (2d Cir. July 23, 2019); *Joseph v. Decker*, No. 18-CV-2640(RA), 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018) ("[E]xhaustion is excused here because any administrative appeal would have been futile and unable to address [the petitioner]'s substantial constitutional claims. The two remedies Petitioner seeks in the alternative from this Court—immediate release without another bond hearing or a supplemental bond hearing with the burden of proof on the Government—are foreclosed at the BIA based on existing administrative precedent."), *appeal withdrawn*, No. 19-245, 2019 WL 3334802 (2d Cir. May 1, 2019) .

Additionally, the record shows that the only viable arguments that Petitioner could make to the BIA are constitutional ones. The IJ's decision found that Petitioner posed a flight risk based on Petitioner's use of a smuggler, lack of proof of bank accounts or property, lack of family or address in the United States, and Petitioner's illegal entry conviction. (Dkt. 4-2 at 14). The Petition contains no allegations that could viably refute the IJ's factual findings. Instead, Petitioner argues a clear-and-convincing-evidence burden of proof was not on the Government at the bond hearing and that the IJ should have considered alternatives to detention when assessing Petitioner's risk of flight. (Dkt. 1 at ¶ 45). As is discussed later in this Decision and Order, the Government should have been held to a clear-and-convincing-evidence burden at the bond hearing, and the IJ should have considered alternatives to detention. *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 242 (W.D.N.Y. 2019) ("At the very least, the IJ was required to consider possible alternatives to detention. . . . And at the very least, the IJ was required to determine whether the government's evidence demonstrated that any and all proffered alternatives to detention would not protect the public.").

Existing BIA precedent does not establish that the clear-and-convincing-evidence standard applies for bond hearings held for "certain other" aliens, nor does it establish that alternatives to detention should be considered when making a bond determination. *See Velasco Lopez*, 2019 WL 2655806, at *3 ("Although the Government rests its laurels on the idea that the BIA altering their entire standard is a 'possibility,' the Government fails to cite any case law or give any examples of decisions by the BIA that indicate willingness or desire to alter their own policy of placing the burden on immigrants to prove, by clear

- 15 -

and convincing evidence, that they are neither a danger to the community nor a risk of flight. Thus, this Court deems the issue of the current burden as predetermined."); *Joseph*, 2018 WL 6075067, at *6 ("Where, as here, 'the challenge is to regulations [and precedent that are] promulgated and consistently enforced by the agency, and which the agency has either no power, or no inclination, to correct,' exhaustion is futile and thus does not serve the policies of judicial efficiency or allowing the agency to correct its own errors." (alteration in original) (quoting *Abbey v. Sullivan*, 978 F.2d 37, 45 (2d Cir. 1992))). As a result, the Court finds that requiring Petitioner to make an untimely appeal to the BIA would not provide Petitioner with a genuine opportunity for adequate relief. *See Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *10 (W.D.N.Y. Feb. 27, 2019) ("Neither the immigration judge nor the BIA have jurisdiction to adjudicate the constitutionality of that burden. So giving [the petitioner] a 'typical' . . . bond hearing would not remedy the due process violation, and requiring him to seek another hearing before an immigration judge therefore would be futile." (citation omitted)); *Joseph*, 2018 WL 6075067, at *7 ("[T]his Court is convinced that it is the only entity able to address [the petitioner]'s substantial constitutional claims and that any attempt to receive relief from the agency would pointlessly prolong a detention that is already pushing constitutional bounds.").

The Government also argues that the appeal would have resulted in a more complete record from which the Court could determine which party bore the burden at the bond hearing. (Dkt. 5 at 17-18). However, at oral argument, counsel for the Government conceded that the burden of proof was almost certainly on Petitioner absent a court order, and as discussed above, BIA precedent as well as the evidence of record indicates that the

burden was on Petitioner. The instant matter is also distinguishable from cases such as *Hossain v. Barr*, No. 6:19-cv-06389-MAT, 2019 WL 5964678 (W.D.N.Y. Nov. 13, 2019), where the court found exhaustion was necessary to further develop the record because "[t]here is no explanation whatsoever as to why the IJ denied bond which leaves the Court unable to conduct a meaningful review of Hossain's claim that the wrong standard of proof was applied at the bond hearing." *Id.* at *4. Instead, the IJ here noted the reasons he denied Petitioner bond, and it is apparent from those reasons that Petitioner bore the burden of proof. Accordingly, it would be futile to require Petitioner to appeal to the BIA to further develop the administrative record.

B. **Process Due to Petitioner**

1. **Entitlement to Due Process Protections**

Next, the Court must address whether "certain other" aliens who have been detained are entitled to protections under the Due Process Clause. The Due Process Clause of the Fifth Amendment provides that the Government may not "deprive[]" any person "of life, liberty, or property, without due process of law." U.S. Const., amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

As the Supreme Court has explained, "[a]n essential principle of due process is that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quotation omitted). "Due process . . . is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Courts in this Circuit and across the country have addressed what due process protections, if any, aliens detained pursuant to § 1225(b) are entitled to in the wake of *Jennings*. *See, e.g.*, *See Clerveaux*, 397 F. Supp. 3d 299; *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794 (S.D.N.Y. Dec. 27, 2018); *Birch v. Decker*, No. 17-CV-6769 (KBF), 2018 WL 794618 (S.D.N.Y. Feb. 7, 2018); *Arias v. Aviles*, No. 15-CV-9249 (RA), 2016 WL 3906738 (S.D.N.Y. July 14, 2016), *appeal filed*, No. 16-3186 (2d Cir. Sept. 12, 2016). However, the courts that have addressed the issue have done so in the context of "arriving" aliens, and this Court's research has not found a case specifically addressing the process due to "certain other" aliens.[4]

The Court finds that Supreme Court precedent establishes that "certain other" aliens are entitled to due process protections. *Zadvydas*, 533 U.S. 678, holds that "[o]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to *all persons within the United States, including aliens*, whether their presence is lawful, *unlawful, temporary*, or permanent." *Id.* at 682 (emphases added). "Certain other" aliens are aliens who enter the United States without passing through a port-of-entry but are encountered within 14 days and within 100 miles of the border. Certain Other Aliens Rule, 69 Fed. Reg. 48877-01, 48879. Accordingly, pursuant to binding Supreme Court precedent, "certain other" aliens such as Petitioner are entitled to due process protections.

---

[4] In *Owusu v. Feeley*, No. 19-CV-694, 2019 WL 3935296 (W.D.N.Y. Aug. 20, 2019), the court found a petitioner who fell within the "certain other" alien classification qualified as a member of the class certified by this Court in *Abdi*, 323 F.R.D. 131. *See Owusu*, 2019 WL 3935296, at *5. In doing so, the *Owusu* court declined to reach the merits of Petitioner's due process arguments. *Id.* at *6 & n.9-10.

### 2.    Substantive Due Process

Petitioner alleges that his prolonged detention has resulted in the violation of his right to substantive due process and requests that he be immediately released. The Court denies the Petition on this ground for the reasons that follow.

"[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh*, 943 F.2d 204, 209 (1991). "It is axiomatic, however, that an alien's right to be at liberty during the course of deportation proceedings is circumscribed by considerations of the national interest." *Id.* If the infringement on an alien's "liberty interest results from a proper exercise of discretion," then a prolonged detention "is not conduct that goes beyond the range of government activity permitted by the Constitution." *Id.* at 211. "[D]etention of an alien 'once removal is no longer reasonably foreseeable' . . . violates the Due Process Clause." *Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003). "[O]nce the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

In the instant matter, Petitioner has failed to demonstrate that his removal is not reasonably foreseeable. To the contrary, Petitioner would be removed if he withdrew his asylum application.    Petitioner "may not rely on the extra time resulting" from his immigration proceedings "to claim that his prolonged detention violates substantive due process." *Doherty*, 943 F.2d at 211. Accordingly, the Court denies the portion of the

Petition that rests on substantive due process grounds as well as Petitioner's associated request for immediate release.

### 3.     Process Due to Petitioner

Having concluded that Petitioner is entitled to protections under the Due Process Clause, albeit not immediate release, the Court must assess what process is due to Petitioner. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation omitted).

"In determining 'what process is due,' we recognize that 'due process is flexible and calls for such procedural protections as the particular situation demands.'" *Francis v. Fiacco*, 942 F.3d 126, 142-43 (2d Cir. 2019) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

> [T]his Court applies the three-factor analysis from [*Mathews*] considering (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 143 (quoting *Mathews*, 424 U.S. at 335).

### a.     Private Interest

The main private interest at stake in the instant matter is Petitioner's "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental

action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Hamdi v. Rumsfeld*, 542 U.S. 507, 529-30 (2004) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty[.]" (quotations omitted)). Petitioner's "interest in freedom from detention [i]s an interest of the highest order." *Francis*, 942 F.3d at 143.

Additionally, Petitioner has an interest stemming from the determination that he has a credible fear of persecution. A "credible fear of persecution" is statutorily defined as "a *significant possibility*, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the [asylum] officer, that the alien could establish eligibility for asylum. . . ." 8 U.S.C. § 1225(b)(1)(B)(v) (emphasis added).

> The credible fear standard is designed to weed out non-meritorious cases so that *only applicants with a likelihood of success* will proceed to the regular asylum process. If the alien meets this threshold, the alien *is permitted to remain in the U.S.* to receive a full adjudication of the asylum claim—*the same as any other alien in the U.S.*

H.R. Rep. No. 104-469(I), at 158 (emphases added). The Second Circuit has previously suggested that such individuals have more due process protections than other aliens seeking admission. *See Augustin v. Sava*, 735 F.2d 32, 37 (2d Cir. 1984) ("[I]t appears likely that some due process protection surrounds the determination of whether an alien has sufficiently shown that return to a particular country will jeopardize his life or freedom so as to invoke the mandatory prohibition against his return to that country."); *Yiu Sing Chun v. Sava*, 708 F.2d 869, 877 (2d Cir. 1983) ("[A] refugee who has a 'well-founded fear of persecution' in his homeland has a protectable interest recognized by both treaty and

statute, and his interest in not being returned may well enjoy some due process protection

not available to an alien claiming only admission." (footnotes omitted))[5]; *see also Haitian*

*Centers Council, Inc. v. McNary* ("*HCC*"), 969 F.2d 1326, 1345 (2d Cir. 1992) (finding

the Refugee act and other executive actions "can fairly be said to have established a

reasonable expectation . . . in not being wrongly repatriated" after having been "found by

governmental officials to have *a credible fear of persecution* if returned to Haiti" because

the expectation was "protected by the due process clause"), *cert. granted, judgment vacated*

*sub nom. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 918 (1993).[6]

### b.    Government Interest

As for the Government, it has an interest in detaining aliens "to ensure that the alien

will be available if he or she is determined to be deportable." *Doherty*, 943 F.2d at 211.

The Government also has an interest "in efficient administration of the immigration laws

at the border." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Additionally, the Government

has an interest in the "fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." *Mathews*, 424 U.S. at 335. "Further, it must weigh

---

[5]    *Chun* recognized that "[e]xcludable as well as deportable aliens are protected" by the provisions of the Refugee Act of 1980. 708 F.2d at 877 n.26.

[6]    Although *HCC* was later vacated as moot, it remains persuasive authority. *See Brown v. Kelly*, 609 F.3d 467, 476-77 (2d Cir. 2010) (treating an earlier Second Circuit decision "as persuasive authority" even though the Supreme Court had vacated it); *Gherebi v. Bush*, 374 F.3d 727, 737 n.14 (9th Cir. 2004) ("Although *Haitian Centers* was subsequently vacated as moot pursuant to party settlement, we find the Second Circuit's views to be persuasive, and have, in fact, recently cited this case with approval." (citations omitted)); *United Nat. Ins. Co. v. Waterfront N.Y. Realty Corp.*, 948 F. Supp. 263, 268 (S.D.N.Y. 1996) (noting that where a "decision was not vacated on the merits, it remains strong persuasive authority").

heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon*, 459 U.S. at 34.

### c.  **Risk of Erroneous Deprivation**

The Court now turns to Petitioner's risk of erroneous deprivation and "the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. "[T]he key to the constitutionality of a grave deprivation, of course, is that before the Government unilaterally takes away that which is sacred, it must provide *meaningful* process[.]" *Martinez v. McAleenan*, 385 F. Supp. 3d 349, 363 (S.D.N.Y. 2019), *appeal filed*, No. 19-2533 (2d Cir. Aug. 16, 2019); *see Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ("The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."). "[T]he Supreme Court has reiterated that regardless of what provisions and procedures Congress enacts pursuant to its 'plenary power' to create immigration law, that power is always subject to constitutional limitations." *Martinez*, 385 F. Supp. 3d at 364; *see Zadvydas*, 533 U.S. at 695 (citing *INS v. Chadha*, 462 U.S. 919, 941-42 (1983) for the proposition that Congress must choose "a constitutionally permissible means of implementing" that power).

In the instant matter, Petitioner was provided a bond hearing where he bore the burden of proving that he was not a risk of danger to the community or a flight risk.  The other process available to Petitioner, as mentioned earlier in this Decision and Order, is the opportunity to apply for discretionary parole pursuant to 8 U.S.C. § 1182(d)(5). The Court finds that the risk of erroneous deprivation of Petitioner's liberty under both of these procedures is high.

Courts within this Circuit are split as to whether parole proceedings are sufficient to satisfy the Constitution's due process requirements as to "arriving" aliens. *Compare Clerveaux*, 397 F. Supp. 3d at 314 ("A procedure whereby long-term detainees, many without counsel, are saddled with the responsibility of determining how to apply for parole only slightly reduces the risk of erroneous deprivation of their interest in being free from arbitrary imprisonment." (footnote omitted)), *and Bermudez Paiz*, 2018 WL 6928794, at *12 n.14 (noting "that the parole process is vulnerable to political pressure, further undermining any argument that it can be relied on to furnish even a base level of due process" (citation omitted)), *and Birch*, 2018 WL 794618, at *7 (stating that because "the parole authority contained in § 1182(d)(5)(A) is entirely discretionary, it provides no actual due process protection for persons facing indefinite detention under § 1225(b)"), *and Arias*, 2016 WL 3906738, at *10 ("[T]he discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."), *with Alexandre v. Decker*, No. 17 Civ. 5706 (GBD) (KHP), 2019 WL 1407353, at *5 (S.D.N.Y. Mar. 28, 2019) ("[T]he parole procedure, as currently enforced, satisfies due process for 'arriving aliens[.]'"), *and Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 650 (S.D.N.Y. 2018) ("[B]ecause the statutory language makes clear that aliens detained pursuant to Section 1225(b)(1)(A) have no statutory entitlement to bond hearings, and because [*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953)] instructs that, for aliens on the threshold of initial entry, the Constitution extends no farther than statutory language itself, *Mezei* compels the conclusion that Petitioner's due process rights have not been infringed.").

The courts that have found discretionary parole proceedings sufficient to protect the due process interests of "arriving" aliens rely on the Supreme Court's 1953 decision in *Mezei*. This Court is skeptical of *Mezei*'s applicability in this context. The petitioner in *Mezei* was detained during the Korean War pursuant to "emergency regulations," which were promulgated pursuant to a congressional authorization intended for use "during periods of international tension and strife." *Id.* at 210, 214-15; *see Clerveaux*, 397 F. Supp. 3d at 315 n.12 ("*Mezei*, decided at the height of the Cold War—explicitly tailored its holding to the national security context." (quotations omitted)); *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018) ("[T]he *Mezei* Court explicitly tailored its holding to the national security context, acknowledging that '[a]n exclusion proceeding grounded on danger to the national security . . . presents different considerations' than a typical deportation proceeding." (quoting *Mezei*, 345 U.S. at 210, 215-16)), *appeal filed*, No. 18-3714 (2d Cir. Dec. 11, 2018); *see also Rosales-Garcia v. Holland*, 322 F.3d 386, 413-14 (6th Cir. 2003) ("[T]he *Mezei* Court explicitly grounded its decision in the special circumstances of a national emergency and the determination by the Attorney General that *Mezei* presented a threat to national security." (footnote omitted)); *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1388 (10th Cir. 1981) (noting that Mezei "was excluded as a security risk and the Korean War was in progress; security risks and enemy aliens during wartime have always been treated specially"). Respondents have not cited to any such heightened security concerns in the instant matter. *See Johnson v. Eisentrager*, 339 U.S. 763, 772 (1950) ("[D]isabilities this country lays upon the alien who becomes also an enemy are imposed temporarily as an incident of war and not as an incident of alienage.").

Even if *Mezei* applies outside of the national security context, it still would not

support that discretionary parole proceedings provide sufficient process to Petitioner.

*Mezei* distinguishes aliens that enter the United States by legal or illegal means from aliens

"on the threshold of initial entry," finding that for those on the threshold of entry,

"[w]hatever the procedure authorized by Congress is, it is due process as far as an alien

denied entry is concerned." *Id.* at 212 (quotation omitted). In contrast, "aliens who have

once passed through our gates, *even illegally*, may be expelled only after proceedings

conforming to traditional standards of fairness encompassed in due process of law." *Id.*

(emphasis added). Because Petitioner was not on the threshold of initial entry but instead

entered the United States illegally, *Mezei* supports that Petitioner is entitled to process that

encompasses "traditional standards of fairness."[7] Accordingly, the Court follows the logic

---

[7] At oral argument, the Government argued that it goes against notions of fairness for aliens who enter the country illegally to be entitled to more due process protections than those attempting to enter the country through legal avenues. The Government's argument assumes that "arriving" aliens are entitled to less due process rights than "certain other" aliens. While the Court does not resolve what due process rights, if any, "arriving" aliens subject to prolonged detention have post-*Jennings*, it notes that, as discussed later in this Decision and Order, the vast majority of courts within this Circuit that have addressed the process due to "arriving" aliens have found they are entitled to an individualized review of their detention in addition to the parole procedures provided for in the statutory scheme. At least one court in this Circuit has indicated in dicta that "[a]lthough it may be counterintuitive, an alien who sneaks across the border therefore is entitled to more constitutional protection than an alien who tries to enter lawfully at a border crossing, legally seeks admission, and is paroled into the country." *Clerveaux*, 397 F. Supp. 3d at 313 n.9. Regardless, the Supreme Court has made clear that aliens detained within the borders of the United States are entitled to due process protections no matter what statutory or regulatory label they are given. *See Zadvydas*, 533 U.S. 693 ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders."); *see also Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring) ("This Court has made clear . . .

of the majority of courts in this Circuit and finds that "[b]ecause the grant of parole pursuant to § 1182(d)(5)(A) is 'entirely discretionary,' with discretion vested in the same agency charged with removing inadmissible aliens, 'it provides no actual due process protection'" to Petitioner as a "certain other" alien facing indefinite detention under § 1225(b). *Bermudez Paiz*, 2018 WL 6928794, at *12 n.14 (quoting *Birch*, 2018 WL 794618, at *7).

The Court also finds that the bond hearing already provided to Petitioner imposes a high risk of erroneous deprivation. Courts in this Circuit, including this Court, have overwhelmingly concluded that it is a violation of procedural due process to require an immigration detainee held under § 1226(a) to bear the burden of proof at his bond hearing. *See, e.g.*, *Aparicio-Villatoro*, 2019 WL 3859013, at *7 ("As to the applicable burden of proof, most courts that have decided the issue have concluded that [the] Government must supply clear and convincing evidence that the alien is a flight risk or danger to society."); *Velasco Lopez*, 2019 WL 2655806, at *3 ("[E]very court to have considered the constitutional issue presented in this case has agreed . . . [that] under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)"); *Brevil v. Jones*, No. 17 CV 1529-LTS-GWG, 2018 WL 5993731, at *4 (S.D.N.Y. Nov. 14, 2018) ("The Court has reviewed and is persuaded by recent decisions within and outside of this district which hold that due process requires that the Government demonstrate dangerousness or risk of flight by a clear and convincing standard at an immigration detainee's bond hearing." (quotation and

---

that due process protections against vague laws are not to be avoided by the simple label [the government] chooses to fasten upon its conduct or its statute." (quotation omitted)).

alteration omitted)). *But see Rasel v. Barr*, No. 19-CV-458 LJV, 2019 WL 4257408, at *6 (W.D.N.Y. Sept. 9, 2019) (finding that a bond hearing at which an immigration detainee bears the burden of proof is not "a facially invalid process").

Additionally, most courts within this Circuit that have found "arriving" aliens subject to prolonged detention are entitled to a bond hearing have held that the standard for such a bond hearing mirrors that accorded aliens detained under § 1226(a). *See Lett*, 346 F. Supp. 3d at 389 ("[T]he Government must prove by clear and convincing evidence that Petitioner's continued detention is justified."); *De Ming Wang v. Brophy*, No. 17-CV-6263-FPG, 2019 WL 112346, at *1 (W.D.N.Y. Jan. 4, 2019) ("[T]he Petition is granted to the extent that the Court finds Petitioner entitled to an individualized bond hearing in which the Government must prove by clear and convincing evidence that Petitioner's continued detention is justified based on flight risk or danger to the community."); *Bermudez Paiz*, 2018 WL 6928794, at *15 ("The mere possibility of removal does not meaningfully distinguish immigration detention from other types of civil commitment, at which the clear and convincing standard is typically imposed on the government." (quotation omitted)); *Kouadio v. Decker*, 352 F. Supp. 3d 235, 241 (S.D.N.Y. 2018) ("There is no merit to the government's argument that the normal burden of proof should shift to petitioner."); *Perez*, 2018 WL 3991497, at *6 (holding that "imposing a clear and convincing standard [on the Government] would be most consistent with due process" (alteration in original) (quoting *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *10-11 (S.D.N.Y. July 25, 2018), *appeal withdrawn*, No. 18-2824, 2019 WL 1377025 (2d Cir. Feb. 5,

2019))).[8] Because Petitioner is a "certain other" alien who was detained after entering the United States, he is entitled to at least as much process as an "arriving alien," as well as the amount of process given to other illegal aliens detained within the United States.

Moreover, Petitioner's prolonged detention further illustrates he suffers from a high risk of erroneous deprivation. In this Circuit, in assessing the risk of an erroneous deprivation of liberty, "courts examine each individual's detention circumstances to determine whether it has become 'unreasonable or unjustified.'" *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (quoting *Demore*, 538 U.S. at 532). The case-by-case approach is an "as-applied, fact-based analysis . . . derived from the Supreme Court's decisions in *Zadvydas* and *Demore*[.]" *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *10 (S.D.N.Y. May 23, 2018), *appeal withdrawn*, No. 18-2591, 2019 WL 4137822 (2d Cir. May 7, 2019); *see Joseph*, 2018 WL 6075067, at *10 n.7 (concluding that "[t]he *Mathews* test is consistent with the approach of . . . considering immigration-specific factors for the procedural due process analysis," and the majority of courts in this

---

[8] The court in *Clerveaux*, 397 F. Supp. 3d 299, found that the petitioner, who was an "arriving" alien, was entitled to a rigorous custody review but not necessarily a bond hearing. *Id.* at 321. The court relied on decisions often referred to as the Mariel Cuban line of cases, especially the Second Circuit's decision in *Guzman v. Tippy*, 130 F.3d 64 (2d Cir. 1997). *See id.* at 316-20. However, as other courts in this Circuit have noted, *Guzman* was decided before the Supreme Court's decision in *Zadvydas*. *See, e.g.*, *Kouadio*, 352 F. Supp. 3d at 240 n.2. *Clerveaux* specifically references the petitioner's status as an "arriving" alien that had not yet entered the United States to explain why *Zadvydas* did not impact *Guzman*'s implications for that petitioner. 397 F. Supp. 3d at 320 n.17 ("[T]his Court fails to see how *Zadvydas* undermines the case law's distinction between 'arriving' aliens and those aliens who have 'entered' the United States—legally or illegally."). Accordingly, since Petitioner is not an "arriving alien," the Court does not find the holding in *Clerveaux* to be dispositive here.

Circuit seem to have adopted the fact-based inquiry approach). The factors set forth by district courts in this Circuit for a court to consider in determining whether an alien's length of detention has become unreasonable or unjustified, can be summed up as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.[9]

*Cabral*, 331 F. Supp. 3d at 261. Although some of these factors are directed at aliens who have committed crimes in the United States and are detained pursuant to 8 U.S.C. § 1226(c), many of these factors are useful for assessing whether Petitioner's detention demonstrates a high risk of erroneous deprivation.

As to the first factor, Petitioner has been detained in immigration custody since June 2018, and has not had any sort of individualized review of his detention since December 2018. Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz*, 2018 WL 6928794, at *13 (citation omitted). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett*, 346 F. Supp. 3d at 387 (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), and "courts have found detention shorter than a year to be unreasonably prolonged as part

---

[9]    This is not to suggest that other factors cannot be considered by a court in the appropriate case. In other words, it would be inconsistent with the flexible nature of due process, *Jennings*, 138 S. Ct. at 852, to restrict the analysis to hard-and-fast factors with no ability to adapt those factors to the particular facts of a case.

of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases). This factor weighs strongly in Petitioner's favor.

Respondents contend the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "Petitioner has been the sole cause of his continued detention." (Dkt. 5 at 20). For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court 'may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals.'" *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quoting *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218 (11th Cir. 2016), *vacated on other grounds*, 890 F.3d 952 (11th Cir. 2018)), *appeal withdrawn*, No. 18-2881, 2019 WL 1503029 (2d Cir. Mar. 25, 2019); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))). "[C]ourts should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them." *Hernandez*, 2018 WL 3579108, at *7 (quotation omitted).

Respondents cite to this Court's decision in *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at *6 (W.D.N.Y. Nov. 7, 2018), to support their argument that Petitioner may end his detention at any time. (Dkt. 5 at 20). However, *Sigal* is

distinguishable from the instant matter. The Court's decision in *Sigal* focused on the petitioner's substantive due process arguments because the forms of relief the petitioner sought in his petition and briefing were for immediate release or for the Court to actually conduct a bond hearing. (*See* Petition, *Sigal v. Searls*, No. 1:18-cv-00389-EAW, Dkt. 1 at ¶ 37 (W.D.N.Y. Mar. 28, 2018) (alleging in petition that "Petitioner is therefore entitled to immediate release on his own recognizance or under bond, by order of this court")); *see also Doherty*, 943 F.2d at 209 ("[The petitioner] does not argue that the process under which he was denied bail was unfair or inadequate, but rather, that the very fact that he has been subjected to prolonged detention without bail violates his substantive right to liberty.").

Moreover, the facts in *Sigal* are easily distinguishable from this case. The *Sigal* petitioner had been ordered removed by an IJ before ever being taken into DHS custody, and the BIA affirmed the IJ's decision within about a week after the *Sigal* petitioner was taken into DHS custody. 2018 WL 5831326, at *2. As a result, the entire length of the *Sigal* petitioner's custody in DHS was directly related to his pursuit of an appeal before the Second Circuit with a corresponding stay of removal. As this Court noted in *Sigal*, while a petitioner should not be punished for seeking review of administrative or judicial decisions, "that right does not mean it may be exercised without consequence," *id.* at *6 (citation and quotation omitted), and in fact, the *Sigal* petitioner's removal would not have prevented his pursuit of relief before the Second Circuit, *id.* at *6 n.5. Thus, the Court in *Sigal* was persuaded that the petitioner's litigation strategy was largely responsible for the length of his detention. In fact, shortly after this Court issued its decision in *Sigal*, the

petitioner discontinued his appeal before the Second Circuit, *see Sigal v. Whitaker*, No. 17-2197, Dkt. 92, thus further confirming the Court's opinion concerning the petitioner's litigation strategy. Here, the Court is not similarly persuaded that Petitioner is engaging in a litigation strategy meant to prolong his immigration proceedings. The record does not show that the continuances requested by Petitioner and his attorney were unnecessary or made in bad faith; to the contrary, they were made to help prepare for the various hearings before the IJ, and at least one continuance was made due to bad weather. (Dkt. 4-1 at ¶¶ 8-11). Additionally, the remand by the BIA to the IJ suggests that Petitioner is legitimately contesting the validity of those immigration proceedings. As such, it would not be appropriate to utilize these requests for adjournment to penalize Plaintiff. *See, e.g.*, *Sopo*, 825 F.3d at 1218; *Vallejo*, 2018 WL 3738947, at *4; *Hernandez*, 2018 WL 3579108, at *7; *Sajous*, 2018 WL 2357266, at *11.

As for the third factor, Petitioner has asserted defenses to removal in the immigration proceedings—he has applied for asylum. (Dkt. 9 at 2-3). "The Court need not inquire into the strength of [Petitioner's] defenses—it is sufficient to note their existence and the resulting possibility that the Petitioner will ultimately not be removed, which diminishes the ultimate purpose of detaining the Petitioner pending a final determination as to whether he is removable." *Sajous*, 2018 WL 2357266, at *11; *see* *Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal); *Perez*, 2018 WL 3991497, at *5 ("Petitioner has made a claim for asylum that could be a defense to his removal, again

tilting the scales toward his unreviewed detention being unreasonable."). Accordingly, this factor weighs in Petitioner's favor.

The fourth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is at best neutral. Respondents have submitted a declaration describing the conditions of confinement at the Buffalo Federal Detention Facility as not consisting of "the same level of restrictions typical for someone held at a prison." (Dkt. 4-3 at ¶ 7). However, even with the amenities, such as entertainment, a microwave, and a juice bar, detailed in that declaration (*id.* at ¶¶ 7-8), the reality is that the facility houses aliens against their will with various restrictions on their freedom of movement. Thus, while perhaps not akin to a maximum-security prison, for many aliens, even crediting the description set forth in the declaration, the facility does not seem meaningfully different from at least a low-security penal institution for criminal detention.

The final relevant factor, whether Petitioner's detention is near conclusion, weighs in Petitioner's favor. To the Court's knowledge, the BIA remanded Petitioner's case to an IJ, the IJ has not yet issued a ruling, and there is no indication of when that will happen. *See Dukuray v. Decker*, No. 18 CV 2898 (VB), 2018 WL 5292130, at *5 (S.D.N.Y. Oct. 25, 2018) ("[T]here is 'significant reason to believe that [petitioner's detention] will continue . . . because . . . he would remain detained throughout the course of an appeal by either side.'" (second alteration in original) (quoting *Lett*, 346 F. Supp. 3d at 387)).

The Court finds that most if not all of the factors favor Petitioner. On balance and particularly in view of the length of the detention and the circumstances surrounding that

detention, the Court finds that Petitioner's prolonged detention with the process that has been given to him demonstrates that his risk of erroneous deprivation is high.

Taking all of the above into consideration and weighing the *Mathews* factors accordingly, the Court finds "the 'minimal burden' that a bond hearing would place on the Government is far outweighed by [Petitioner]'s interest in 'ensur[ing] that his continued detention is justified,'" *Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) (quoting *Vallejo*, 2018 WL 3738947, at *5), and due process requires that Petitioner receive a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence. Additionally, the Court finds that both due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond. *See Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests."); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (collecting cases); *Lett*, 346 F. Supp. 3d at 389 ("The Court agrees with Petitioner that an immigration bond hearing that fails to consider ability to pay or alternative conditions of release is constitutionally inadequate."); *Hernandez*, 2018 WL 3579108, at *12 ("[T]he Due Process Clause requires than an IJ consider ability to pay and alternative conditions of release in setting bond." (quotation and alteration omitted)).

## CONCLUSION

For the foregoing reasons, the Petition (Dkt. 1) is granted solely to the extent that the Court orders Respondents to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 14 days of its entry. If Petitioner requests a continuance that results in a bond hearing date outside the 14-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. The Clerk of Court is instructed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: February 3, 2020
    Rochester, New York